**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| **Aleta Taylor,** ) | **CASE NO. 1:14 CV 1273** |
| ) | |
| **Plaintiff,** ) | **JUDGE PATRICIA A. GAUGHAN** |
| ) | |
| v. ) | |
| ) | **Memorandum of Opinion and Order** |
| **Cuyahoga County Land Reutilization** ) | |
| **Corp.,** *et al.***,** ) | |
| ) | |
| **Defendants.** ) | |

### INTRODUCTION

*Pro se* Plaintiff Aleta Taylor filed this action against the Cuyahoga County Land Reutilization Corp. ("CCLRC"), CCLRC President and General Counsel Gus Frangos, Cleveland City Councilman Michael D. Polensek, the City of Cleveland, Cuyahoga County Side Yard Program Administrator Lilah Zautner, and Plaintiff's neighbor Mr. Madar. In the Complaint, Plaintiff claims the CCLRC conveyed an adjacent parcel of property to Madar and not to her. She asks this Court to enjoin Madar from using the land, stop the CCLRC from conveying the land to Madar, grant her exclusive use of the property, and award her monetary damages.

Plaintiff also filed an Application to Proceed *In Forma Pauperis*. (ECF No. 2). That Application is granted.

### BACKGROUND

This case centers on a dispute between neighbors in Cleveland, Ohio.  The Plaintiff owns and occupies a residential property located at 729 East 156th Street in Cleveland.  Madar owns a multi-family dwelling located on the adjacent property perpendicular to Plaintiff's parcel.  He rents all of the units to tenants, and does not personally reside on the property.  Directly beside Madar's property and perpendicular to Plaintiff's property is a lot owned by the CCLRC, which contained a vacant or abandoned dwelling.  (ECF No. 1-1 at 18).  Both Plaintiff's property and Madar's property abut the CCLRC property.

Plaintiff purchased her property in 2006.  At that time, a surveyor completed a mortgage location survey of the property for Affinity Title Agency.  The surveyor concluded that Plaintiff's property, specifically her concrete driveway, encroached on the CCLRC property by 0.7' near her garage.  That survey also clarified that "[t]his service was not performed for the purpose of establishing boundary lines and is not to be used for that purpose."  (ECF No. 1-2 at 19).

Plaintiff and Madar have an acrimonious relationship.  Plaintiff alleges that although Madar does not live on his property, he uses the garage for his personal storage, forcing his tenants to park in front of the garage and in the street.  She claims these cars often block her driveway or leave her very limited space to pull in and out of her garage.  It also creates an unattractive appearance to have cars parked in front of the residence.  Plaintiff confronted Madar and asked him to alleviate the problem but he has not done so.  She describes Madar as a physically intimidating man who is a complete stranger to the neighborhood.  She states he disrupted the neighborhood and became a nuisance.  Plaintiff's son has also been involved in disputes with Madar.

Recently, Madar filed an application with the Cuyahoga County Land Bank Side Yard Program to purchase the adjacent property owned by the CCLRC. Through the Side Yard Program, individuals who live or do business next to a vacant lot owned by the Cuyahoga County Land Bank may apply to purchase the lot to expand their yard or business if they meet certain eligibility guidelines.[1] The guidelines indicate the applicant should preferably live in and own a property adjacent to a Land Bank lot; however, the Land Bank may waive this preference to accommodate non-occupant owners or non-adjacent applicants who would otherwise qualify to purchase property. Similarly, the lot should be vacant with no structures, unless approved by the Land Bank. The Land Bank may required the demolition of the structures as a condition of sale. To proceed with the application, the applicant must provide a letter of determination from his or her City Councilperson indicating that the City supports the sale of the property. In this case, Madar obtained a letter of determination from Councilman Michael Polensek. The Side Yard Program operates on a "first come first served" basis, and gives priority consideration to the first qualified applicant to complete an application. Madar was the first individual to complete the application, and the Land Bank approved the sale of the CCLRC lot to him.

Plaintiff disapproves of Madar's purchase of the CCLRC property. She contends "it is impossible for him to manage the ongoing chaos of a block[ed] driveway, an injury he has caused and hostility he has created" and if Madar is permitted to purchase the CCLRC lot closest to her garage, the parking problem could become worse. (ECF No. 1 at 6). She also indicates she would like to have purchased the property but was not aware of the Side Yard

---

[1] *See* http://www.cuyahogalandbank.org/sideYard.php

Program nor the inclusion of the CCLRC property in that program.  She states it was not offered for sale to the general public through a realtor and she did not realize she could buy it.

It appears Plaintiff tried to convince the CCLRC to stop the sale of the property to Madar and instead sell it to her.  Frangos and Zautner, met with both Plaintiff and Madar separately to discuss Plaintiff's concerns.  They indicated to Plaintiff that they still intended to transfer the property to Madar but would cause an easement to be filed in favor of her property beginning at the northern edge of Plaintiff's garage to allow four to five additional feet for ingress and egress to and from her garage.  In addition, Madar agreed to construct a fence at his cost along the easement to limit the chances of tenants parking in the easement space.  The CCLRC explained that this easement would create an estate in the land, and while she would not technically own the underlying land within the easement, she would have legal grounds to enforce a property right.  The CCLRC acknowledged that this was not her preferred outcome but asked her to confirm acceptance of the agreement.  They noted that if she did not accept the agreement, they would still transfer the property to Madar, and "you will be left to work out any issues you have."  (ECF No. 1-1 at 17).

Plaintiff declined the offer.  She argued to the CCLRC that Madar was ineligible for purchase of the property under the Side Yard Program because Madar did not live in the adjacent property and because there were structures on the property.[2]  She indicated she had problems with Madar and that he was using the property even though it had not been conveyed to him yet.  She asked the CCLRC to stop the conveyance until her legal disputes are resolved.

---

[2]   Plaintiff also states that the property became available for sale due to a city or county demolition so it is possible the structures were removed in anticipation of transfer.

The CCLRC did not grant her request.

Plaintiff then filed this action asking this Court to stop the conveyance of land to Madar. She asserts four claims. First, she contends she is entitled to true legal title of the land through adverse possession. She supports this claim with the 2006 mortgage survey indicating her driveway is 0.7' over the property line near her garage and suggests it has been that way for over twenty-one years. She claims this makes her the rightful owner of the entire CCLRC lot. Second, she asserts a claim for encroachment claiming Madar is permitting others to park their cars in such a manner that encroaches on her ingress and egress from her garage. Third, she claims the Defendants engaged in housing discrimination by selling the property to a Caucasian male instead of to her, an African American female "for no other reason than skin color." She asserts she is a member of a suspect class and "is being robbed of a fair and equitable opportunity to buy the property that other white citizens have causing disparity in treatment by the local government agencies who is [sic] the purveyor of such injustice with the results being unconstitutional as applied, notwithstanding that the Land Bank procedures may not be unconstitutional on their face." (ECF No. 1 at 12). She states that "no matter how well intended the sale of the land to Mr. Madar is, it has a disparate impact on black African American Aleta Taylor... ." (ECF No. 1 at 12). She asserts this claim as a violation of 42 U.S.C. § 1982, and 42 U.S.C. § 3604. Finally, Plaintiff includes a claim of intentional infliction of emotional distress against Madar.

**STANDARD OF REVIEW**

Although *pro se* pleadings are liberally construed, *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam); *Haines v. Kerner*, 404 U.S. 519, 520 (1972), the district court is

required to dismiss an *in forma pauperis* action under 28 U.S.C. §1915(e) if it fails to state a claim upon which relief can be granted, or if it lacks an arguable basis in law or fact. *Neitzke v. Williams*, 490 U.S. 319 (1989); *Lawler v. Marshall*, 898 F.2d 1196 (6th Cir. 1990); *Sistrunk v. City of Strongsville*, 99 F.3d 194, 197 (6th Cir. 1996). A claim lacks an arguable basis in law or fact when it is premised on an indisputably meritless legal theory or when the factual contentions are clearly baseless. *Neitzke*, 490 U.S. at 327. A cause of action fails to state a claim upon which relief may be granted when it lacks "plausibility in the Complaint." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 564 (2007). A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009). The factual allegations in the pleading must be sufficient to raise the right to relief above the speculative level on the assumption that all the allegations in the Complaint are true. *Bell Atl. Corp.*, 550 U.S. at 555. The Plaintiff is not required to include detailed factual allegations, but must provide more than "an unadorned, the-Defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading that offers legal conclusions or a simple recitation of the elements of a cause of action will not meet this pleading standard. *Id.* In reviewing a Complaint, the Court must construe the pleading in the light most favorable to the Plaintiff. *Bibbo v. Dean Witter Reynolds, Inc*., 151 F.3d 559, 561 (6th Cir. 1998).

**DISCUSSION**

Of Plaintiff's four claims, only her discrimination claim arises under federal law. She asserts this claim under 42 U.S.C. §§ 1982 and 3604. Title 42 U.S.C. § 3604 provides in pertinent part:

>    it shall be unlawful–
>
>    (a) To refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, familial status, or national origin.
>
>    (b) To discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin.

Similarly, 42 U.S.C. § 1982 states, "All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property." Both statutes require as an element of a cause of action that Plaintiff plead sufficient facts to plausibly demonstrate intentional racial discrimination. *See Moniz v. Cox*, No. 11–1790, 2013 WL 216070, at *4 (6th Cir. Jan 22, 2013)(citing *Jones v. Alfred H. Mayer Co.*, 392 U.S. 409 (1968); *Greene v. City of Memphis*, 535 F.2d 976 (6th Cir. 1976)).

Plaintiff, however, fails to allege any facts to suggest she was denied the ability to purchase the CCLRC lot because of her race. The property was listed by the CCLRC as a possible Side Yard property. Madar applied first to purchase it and his application was accepted before Plaintiff expressed an interest in it. There is no indication that Plaintiff even submitted an application to be considered as a potential purchaser. The Side Yard Program specifically states that properties are available for sale on a "first come first served" basis and priority will be given to the first applicant that successfully completes the application. As the first applicant, Madar would be given priority regardless of his race or the race of the other applicants. This claim is stated entirely as a legal conclusion with no factual allegations suggesting race was a

factor in the decision to grant Madar's application. This claim is dismissed.

Plaintiff also mentions constitutional violations, suggesting the Side Yard Program is discriminatory as applied to her. The Equal Protection Clause prohibits discrimination by government actors which either burdens a fundamental right, targets a suspect class, or intentionally treats one differently than others similarly situated without any rational basis for the difference. *Rondigo, L.L.C. v. Township of Richmond*, 641 F.3d 673, 681-82 (6th Cir. 2011); *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 312 (6th Cir. 2005). The threshold element of an equal protection claim is disparate treatment. *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir.2006). When disparate treatment is shown, the equal protection analysis is determined by the classification used by government decision-makers.

Plaintiff suggests that this program, while neutral on its face, had a disparate impact on her. She contends the CCLRC granted the application of Madar, a Caucasian male, when she as an African American female would have liked to have purchased the property if she has known it was available. The administration by state officers of a state statute neutral on its face, which results in unequal application to those entitled to be treated alike, is not a denial of equal protection unless there is shown to be intentional or purposeful discrimination. *Snowden v. Hughes*, 321 U.S. 1, 8 (1944); *Charles v. Baesler*, 910 F.2d 1349, 1356 (6th Cir. 1990). Discriminatory purpose "implies more than ...awareness of consequences. It implies that the decision-maker...selected...a particular course of action at least in part 'because of,' not merely 'in spite of' its adverse effects upon an identifiable group." *Personnel Admin. of Mass. v. Feeney*, 442 U.S. 256, 279 (1979); *Coyne v. City of Sommerville*, 972 F.2d 440, 445 (1st Cir. 1992). A discriminatory purpose will not be presumed. *Tarrance v. State of Florida*, 188 U.S.

519, 510 (1903).

Here, Plaintiff has not alleged facts to suggest purposeful discrimination. The decision to sell the property to Madar and not to Plaintiff was based on the fact that Madar applied to the program to purchase it, and Plaintiff did not. There is no indication Plaintiff's race was a factor in granting Madar's application. Plaintiff contends she would have liked to have purchased the property but it was not offered for sale to the public. There is no legal requirement that all property be offered for sale to the general public through a realtor with public advertisements of its availability for purchase displayed with yard signs. In fact, this property was not available for sale to the general public, but rather was available for sale through the Side Yard Program only to individuals who met the criteria of the program and who submitted a proper application. As contiguous property owners, both Plaintiff and Madar had the same opportunity to make inquiries into the purchase of the property and to apply to the program. Madar did submit an application. Plaintiff does not suggest she was prevented from applying to the Side Yard Program to purchase the lot. She simply expressed an interest in the property after it had been granted to Madar. She does not allege disparate treatment or purposeful discrimination.

Plaintiff's remaining causes of action for adverse possession, encroachment, and intentional infliction of emotional distress are premised on Ohio law. Supplemental jurisdiction exists whenever state law and federal law claims derive from the same nucleus of operative facts and when considerations of judicial economy dictate having a single trial. *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 724 (1966). The Court, however, may exercise discretion in hearing state law matters. *Id.* at 726. In cases where the federal law claims are dismissed before trial, the state law claims should also be dismissed. *Id.* Having dismissed

Plaintiff's federal law claims, this Court declines jurisdiction to hear her state law claims.

**CONCLUSION**

Accordingly, Plaintiff's Application to Proceed *In Forma Pauperis* (ECF No. 2) is granted and this action is dismissed pursuant to 28 U.S.C. §1915(e). The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.

IT IS SO ORDERED.

    /s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
United States District Judge

Dated: 10/14/14